IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ALVIS JACKSON WATKINS, JR.                                    PLAINTIFF

V.                         CASE NO. 5:22-CV-5027

CORPORAL SHANNON SMITH (Badge #125),
Washington County Sheriff's Department                         DEFENDANT

## OPINION AND ORDER

Before the Court is the Report and Recommendation ("R&R") (Doc. 52) filed in this case by the Honorable Christy Comstock, United States Magistrate Judge for the Western District of Arkansas. The R&R recommends that the Court grant the Motion for Summary Judgment (Doc. 36) and Supplemental Motion for Summary Judgment (Doc. 46) filed by Defendants Corporal Shannon Smith and Washington County, Arkansas. Plaintiff Alvis Jackson Watkins, Jr., filed objections to the R&R. *See* Doc. 54. Pursuant to 28 U.S.C. § 636(b)(1), the Court has reviewed the record *de novo* to resolve the pending objections. For the reasons stated below, the R&R is **ADOPTED IN PART AND NOT ADOPTED IN PART**, and the Motion for Summary Judgment and Supplemental Motion are **GRANTED IN PART AND DENIED IN PART**.

## I.   BACKGROUND

The Court incorporates by reference the R&R's thorough recitation of the disputed and undisputed facts but briefly summarizes them here. On October 12, 2021, Mr. Watkins was driving a car on West Double Springs Road in Washington County, Arkansas, when the car's transmission began having mechanical issues. Mr. Watkins

1

decided to back the car into a driveway to wait for a friend to tow it. As he was backing in, Corporal Smith arrived, exited his vehicle, and approached the car to see if Mr. Watkins required any assistance. Corporal Smith calmly ordered Mr. Watkins to stop the car. Mr. Watkins did not comply and instead backed down the driveway while revving the engine and unsuccessfully trying to place the vehicle into park. Corporal Smith drew his service weapon and again ordered Mr. Watkins to stop the vehicle and put his hands up. The vehicle came to a standstill after backing into a fence, and Corporal Smith holstered his firearm and drew his taser. He ordered Mr. Watkins to exit the car, and Mr. Watkins eventually complied. Mr. Watkins exited the car while holding a flashlight and a set of scales in his right hand. Corporal Smith, seeing Mr. Watkins as a threat, fired his taser, which lodged two barbs into Mr. Watkins's skin and delivered an electric shock. Mr. Watkins was transported to the hospital and then arrested for possession of drug paraphernalia, obstruction of governmental operations, no insurance, driving on a suspended license, and criminal mischief.

Mr. Watkins brought this case *pro se* under 42 U.S.C. § 1983 alleging that Corporal Smith used excessive force when he tased Mr. Watkins, wrongfully entered private property to arrest him, and lacked probable cause to arrest him. Mr. Watkins sues Corporal Smith in both his individual and official capacities.

## II.  OBJECTION ONE

In Mr. Watkins's first objection, he asks the Court to preserve for trial his claim that Corporal Smith unlawfully entered onto private property to interrogate and arrest him. The Magistrate Judge recommends this claim be dismissed with prejudice for several reasons,

and Mr. Watkins fails to engage with that reasoning. Upon consideration, the Court agrees with the Magistrate Judge that Mr. Watkins lacks standing to assert a privacy right under the Constitution on behalf of the owner of the private property in question. It is undisputed that Mr. Watkins did not own the property where the arrest took place, nor did he have any social or familial relationship with the owners. As Mr. Watkins lacks standing to assert this claim, the R&R correctly recommends dismissal, and Mr. Watkins's first objection is **OVERRULED**.

### III. OBJECTION TWO

The second objection pertains to Mr. Watkins's excessive-force claim against Corporal Smith in his individual capacity. The R&R recommends granting Corporal Smith summary judgment on this claim because his use of force was objectively reasonable and he is entitled to qualified immunity. Mr. Watkins's objection focuses on his history of heart problems, and he notes that he specifically informed Corporal Smith about his heart condition before Corporal Smith tased him. Mr. Watkins believes he did nothing to provoke the tasing and was doing nothing unlawful at the time, so it was objectively unreasonable for Corporal Smith to have tased him.

"Courts conduct a two-part inquiry to determine whether qualified immunity protects a government official from liability: (1) whether the facts taken in the light most favorable to [the plaintiff] make out a violation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the alleged violation." *Buckley v. Ray*, 848 F.3d 855, 863 (8th Cir. 2017) (citing *Truong v. Hassan*, 829 F.3d 627, 630 (8th Cir. 2016)). Whether Corporal Smith's use of force violated Mr. Watkins's Fourth

Amendment right to be free from excessive force depends on the reasonableness of the force used. The reasonableness of the force is evaluated by looking "to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Baude v. Leyshock*, 23 F.4th 1065, 1073 (8th Cir. 2022) (quoting *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017)).

In recommending that Corporal Smith be granted qualified immunity, the R&R reasons:

> With Watkins revving the engine, refusing to obey commands, and having no knowledge that Watkins would not be able to engage the transmission in drive or park, it was reasonable for Corporal Smith to fear for his own safety. Further, when Watkins did finally exit the car, he had items in his right hand – one of which went flying with enough force to travel approximately thirty feet before landing; applying common sense suggests this was not merely loss of grip of an item and provided further justification for the use of reasonable force. Construing the facts in the light most favorable to Watkins and judging the situation from the perspective of a reasonable officer on the scene, the Court concludes Corporal Smith did not use excessive force in deploying the taser as it was objectively reasonable for him to interpret Watkins' actions as a realistic threat to his personal safety. The circumstances were "tense, uncertain, and rapidly evolving." *Graham,* 490 U.S. at 397; *see also Procknow v. Curry,* 826 F.3d 1009, 1014 (8th Cir. 2016) (consideration should be given to the timing, warnings, and physical capacity of the subject); *Lawyer v. City of Council Bluffs,* 361 F.3d 1099 (8th Cir. 2004) (objectively reasonable for officer to deploy pepper spray when driver began to roll up the window onto the officer's arm). Corporal Smith is entitled to summary judgment on this claim.

(Doc. 52, pp. 16–17).

4

To resolve this objection, the Court has reviewed the entire summary judgment record, including the dashcam footage of the incident, Mr. Watkins's deposition testimony, and Corporal Smith's affidavit. It is undisputed that:

- Corporal Smith was not investigating Mr. Watkins for the commission of any crime nor arresting him prior to the tasing;

- Mr. Watkins's car was on private property;

- Corporal Smith could tell that the car was having mechanical problems, *see* Doc. 47, p. 5;

- Mr. Watkins did not comply with Corporal Smith's orders to turn off the car;

- Mr. Watkins repeatedly revved the car's engine;

- Mr. Watkins backed the car into a fence where it came to a stop;

- Mr. Watkins eventually complied with Corporal Smith's order to exit the car; and

- Mr. Watkins was holding a flashlight and a set of scales in his right hand when he exited the car.

The Court highlights the following disputes of fact between their two accounts.

Mr. Watkins disputes Corporal Smith's claim that the officer was trapped between the front of the car and a fence when Mr. Watkins was revving the car's engine, putting the officer in danger and requiring him to draw his firearm. Mr. Watkins claims that there were fences to the officer's left and right but "nothing was behind Officer Smith" at that point in time. (Doc. 38-8, pp. 52–53). After Corporal Smith drew his taser, Mr. Watkins claims he voluntarily opened the car door and stepped out while pleading with Corporal Smith not to tase him because he has a heart condition. *Id.* at p. 34. Mr. Watkins further

claims that he was so nervous and scared that he lost his grip on the scales as he exited the car and they flew out of his hand into a field. *Id.* at 36. Mr. Watkins claims the scales flew to his right, away from Corporal Smith, who was positioned to Mr. Watkins's left. (Doc. 17, p. 3). He insists that he did not intentionally throw the scales but remembers them ending up about 30 feet to his right. (Doc. 38-8, p. 37). He asserts that he was not acting aggressively, had both hands in the air, and was no longer holding the scales when Corporal Smith tased him. *Id.*

Corporal Smith claims that *he* opened the car door because Mr. Watkins was uncooperative, at which point Mr. Watkins jerked away from the officer, causing him to pull his taser. (Doc. 38-11, ¶ 18). Corporal Smith further claims that, after he opened the door, Mr. Watkins continued yelling and trying to operate the car and that he ordered Mr. Watkins to get on the ground seven or eight times while warning that he would use his taser. *Id.* at ¶ 21. In his preliminary report written on October 12, 2021, the day of the incident, Corporal Smith wrote that Mr. Watkins exited the car with an object in his hand and "appeared to draw it back like he was going to use as a weapon at which point I deployed Taser and he threw the object falling to the ground." (Doc. 38-2, p. 3 (all errors in original)). In an incident report written on March 22, 2022, (Doc. 38-5, p. 2), and in his affidavit prepared for this litigation, Corporal Smith further explained that as Mr. Watkins exited the car he brought his right arm towards Corporal Smith "in a chopping or throwing motion" with the scales "protruding from his hand," (Doc. 38-11, ¶ 22). As Mr. Watkins's arm came toward the officer, he dropped the flashlight, and the scales flew past the officer "as if [they] had been thrown." *Id.* at ¶ 24. Corporal Smith, feeling under attack by an

6

unknown silver object, fired his taser to defend himself. *Id.* at ¶ 23. Corporal Smith asserts that Mr. Watkins complained of a heart condition only after being tased. *Id.* at ¶ 27.

Corporal Smith's reports and affidavit leave ambiguous the exact timing of when the scales left Mr. Watkins's hand—before Corporal Smith fired the taser, after he fired, or at the same moment he fired—and whether it was the throwing of the scales that in part necessitated the tasing or instead the tasing that caused the scales to go flying. In any event, Corporal Smith disputes Mr. Watkins's account that the scales flew out of his hand *away* from the officer and that he was no longer holding the scales, had both his hands in the air, and was not otherwise acting threateningly at the moment Corporal Smith fired his taser.

In the dashcam video, which contains partial audio of the tasing but no video, Corporal Smith tells Mr. Watkins in the moments before firing his taser to "get out or I'm gonna tase you" and to "get on the ground" about eight times in rapid succession. (Doc. 38-6, 17:31:00–17:31:16). Mr. Watkins states, among other things, "I've haven't done nothing," "I'm going [to the ground]," and "don't do it, man." *Id.* at 17:31:03–17:31:17. The engine noise obscures some of Mr. Watkins's statements. After he is tased, Mr. Watkins states that he has a bad heart. *Id.* at 17:31:27. A little over one minute passes between Corporal Smith exiting his patrol vehicle and tasing Mr. Watkins.

Given the state of the evidence in the summary-judgment record, the Court cannot agree with the R&R that there is no genuine, material dispute of fact that Corporal Smith's use of his taser under these circumstances was objectively reasonable. The following questions of fact are genuinely disputed and must be answered by a finder of fact:

7

1. Was Corporal Smith "in a position with a barbed wire fence behind [him], leaving [him] with no escape route" when he drew his firearm? (Doc. 38-11, ¶ 11).

2. Did Mr. Watkins state that he had had a bad heart prior to Corporal Smith tasing him?

3. Did Corporal Smith or Mr. Watkins open the car door?

4. Did Mr. Watkins jerk away from the officer after the door was opened?

5. Was Mr. Watkins making "a chopping or throwing motion" in the direction of Corporal Smith as he exited the car?

6. Did Mr. Watkins throw the scales?

7. Did the scales fly toward or away from Corporal Smith when they left Mr. Watkins's hand?

8. Were the scales still in Mr. Watkins's hand at the moment Corporal Smith tased him?

9. Were Mr. Watkins's hands raised at the moment Corporal Smith tased him?

Were a finder of fact to answer these questions—particularly question five—in Corporal Smith's favor, his use of force would be objectively reasonable. He was faced with an uncooperative individual who had previously threatened the officer with a vehicle and who was now threatening him with a metal object. Conversely, if these questions were answered in Mr. Watkins's favor, a finder of fact could conclude that Mr. Watkins did not pose "an immediate threat to" Corporal Smith. *Westwater v. Church*, 60 F.4th 1124, 1129 (8th Cir. 2023). Under Mr. Watkins's version of events, he was not suspected

8

of any crime and was being compliant, albeit belatedly, pleading to not be tased, had lost his grip on a set of scales that flew away from the officer, and had his hands up.

The R&R's conclusion that a reasonable officer would feel Mr. Watkins was a threat to the officer's safety is understandable. Mr. Watkins revved his vehicle's engine instead of complying with Corporal Smith's reasonable orders to turn off the vehicle, and "a vehicle can constitute a 'deadly weapon,'" *United States v. Dawn*, 685 F.3d 790, 795 (8th Cir. 2012). The entire interaction was short, lasting approximately one minute, and escalated in a matter of seconds. Moreover, Mr. Watkins confusingly asserts that the scales landed 30 feet away from him even though he did not throw them. This seems unlikely, but the Court cannot resolve this question nor the other outstanding factual disputes that will determine the degree of threat Mr. Watkins posed at the moment Corporal Smith fired his taser.

Accordingly, the Court cannot decide at this stage whether Corporal Smith's use of force was objectively reasonable. *See Westwater*, 60 F.4th 1124 at 1130 (reversing the district court's finding that an officer's use of force was objectively reasonable because the plaintiff's testimony, "if credited by a reasonable fact-finder," would have established that the plaintiff was not presenting a threat nor a risk of flight to the officer). The Court now turns to the clearly-established prong of the qualified-immunity inquiry.

Were a finder of fact to resolve the factual disputes in favor of Mr. Watkins, at the moment Corporal Smith tasered Mr. Watkins in October 2021, it would have been clearly established that such an action would violate Mr. Watkins's right to be free from excessive force. The Eighth Circuit has held that, as early as 2005, "the law was sufficiently clear to

inform a reasonable officer that it was unlawful to Taser a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator." *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009); *see also Thompson v. City of Monticello*, 894 F.3d 993, 1000 (8th Cir. 2018) (holding that "it was clearly established that intentionally tasering, without warning, an individual who has been stopped for a nonviolent misdemeanor offense and who is not resisting or fleeing arrest while his hands are visible violates that individual's Fourth Amendment right to be free from excessive force"); *Shekleton v. Eichenberger*, 677 F.3d 361, 366 (8th Cir. 2012) (holding it was excessive force for an officer to tase "an unarmed suspected misdemeanant, who did not resist arrest, did not threaten the officer, did not attempt to run from him, and did not behave aggressively towards him"); *De Boise v. Taser Int'l, Inc.*, 760 F.3d 892, 897 (8th Cir. 2014) ("[N]on-violent, non-fleeing subjects have a clearly established right to be free from the use of tasers . . . .").

Corporal Watkins was neither investigating nor arresting Mr. Watkins for the commission of a crime at the moment he tased him. Mr. Watkins was eventually charged with possession of drug paraphernalia based on Corporal Smith finding a meth pipe in the car and recovering the set of scales *after* he tased Mr. Watkins. Corporal Smith argues that he had reason to "believe that Watkins had committed the offense of Criminal Mischief which involves causing damage to the property of another person without legal justification." (Doc. 47, p. 13). But Corporal Smith did not learn who owned the property

10

until after he fired his taser. As to Mr. Watkins's initial refusals to comply, Corporal Smith does not argue that those refusals constituted a crime on their own, but rather that "[b]ased on Smith's observations and his *subsequent knowledge* of Watkins's outstanding warrants and license suspension, he had probable cause to believe that Watkins's efforts to avoid contact with Smith constituted the offense of refusal to submit to arrest." (Doc. 47, p. 15 (emphasis added)). Finally, Corporal Smith argues that a reasonable officer would have interpreted Mr. Watkins's initial revving of the car engine as an attempt to flee. However, Corporal Smith also argues that when he initiated his encounter with Mr. Watkins, he was performing a "community caretaking function," which by definition is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).[1]

---

[1] To the extent Mr. Watkins makes a claim for wrongful seizure based on Corporal Smith pointing his firearm at Mr. Watkins and ordering him to turn off his vehicle, Corporal Smith is entitled to qualified immunity on that claim. It is undisputed that Corporal Smith initially approached Mr. Watkins's vehicle to offer assistance, and it was only after Mr. Watkins continued revving his vehicle's engine and did not comply with Corporal Smith's orders that the officer drew his firearm. The community caretaking exception to the probable cause and reasonable suspicion requirements has been used to justify officers' seizure of motorists who have disabled vehicles. *See, e.g.*, *United States v. Salgado*, 761 F.3d 861, 865 (8th Cir. 2014).

The Court recognizes, however, that this area of law is somewhat unsettled. The Supreme Court recently reversed the First Circuit's "freestanding community-caretaking exception that applies to both cars and homes," emphasizing that the community caretaking exception is "not an open-ended license to perform [these tasks] anywhere." *Caniglia v. Strom*, 141 S. Ct. 1596, 1600 (2021). *Caniglia* held that the community caretaking exception is not "a standalone doctrine that justifies warrantless searches and seizures in the home," distinguishing the home from officers "responding to disabled vehicles or investigating accidents" on "public highways." *Id.* at 1598. Here, Mr. Watkins was in a disabled vehicle, which favors application of the exception, but he was not on a public roadway. It is not clear whether the community caretaking exception would justify an officer entering private property—without knowing whether the motorist owned the

In addition, under Mr. Watkins's version of events, he raised his hands before being tased and was not advancing on the officer with a metal object. While Mr. Watkins did not comply with Corporal Smith's initial orders, he insists that he was in the process of complying when he was tased. "Even previously-resisting suspects have a constitutional right to be free of a gratuitous application of a Taser once they have stopped all resistance." *Masters v. City of Indep.*, 998 F.3d 827, 836 (8th Cir. 2021) (cleaned up). Moreover, "a reasonable officer is not permitted to ignore changing circumstances." *Id.* (quoting *Neal v. Ficcadenti*, 895 F.3d 576, 581 (8th Cir. 2018)). While Mr. Watkins's initial noncompliance and revving of the car engine may have made a reasonable officer feel threatened when standing in the vehicle's path—particularly if a barbed wire fence was blocking the officer's escape route—the ultimate question here is whether a reasonable officer would have felt threatened by Mr. Watkins "at the precise moment" the officer fired his taser. *Cole ex rel. Est. of Richards v. Hutchins*, 959 F.3d 1127, 1133 (8th Cir. 2020).

In October 2021, it was clearly established that it was excessive force to tase a person who was not suspected of committing any crimes, had refused some commands but was not resisting arrest or fleeing, and was not posing an immediate threat to the officer. *See Brown*, 574 F.3d at 499. Because there are genuine disputes of material fact

---

property or not—to investigate a disabled vehicle and then drawing his firearm to seize the motorist because the motorist revved the vehicle's engine. *Cf. United States v. Woodard*, 5 F.4th 1148, 1152 (10th Cir. 2021) ("The Fourth Amendment imposes 'heightened requirements on police who seize vehicles from private property.'" (quoting *United States v. Sanders*, 796 F.3d 1241, 1249 (10th Cir. 2015)). Nevertheless, even assuming the community caretaking exception would not justify Corporal Smith's seizure of Mr. Watkins, it is not clearly established that a seizure under such circumstances is unconstitutional, and Corporal Smith is entitled to qualified immunity.

as to how uncooperative Mr. Watkins was and whether he physically threatened Corporal Smith in the moments prior to Corporal Smith discharging his taser, Corporal Smith is not entitled to qualified immunity at this stage of the proceedings.[2]

Mr. Watkins's second objection is therefore **SUSTAINED**, and the Court denies Corporal Smith summary judgment on Mr. Watkins's excessive-force claim against the officer in his individual capacity.

### IV. OBJECTION THREE

The third objection concerns the R&R's recommended dismissal of Mr. Watkins's official-capacity claims. In support of this objection, he argues that Corporal Smith's use of his taser violated the Washington County Sheriff's Department's policies. The R&R recommends summary judgment in favor of Washington County on this claim because Corporal Smith committed no underlying constitutional violation. While the Court disagrees with the R&R's excessive-force conclusion, the Court agrees that Washington County is entitled to summary judgment.

An official-capacity claim requires the plaintiff to establish (1) a constitutional violation (2) that results from (a) official county policy; (b) an unofficial custom, or (c) failure to train or supervise. *See Robbins v. City of Des Moines*, 984 F.3d 673, 681–82

---

[2] Corporal Smith also suggests that Mr. Watkins's claim should fail because he has shown only a *de minimis* injury from being tased. *See* Doc. 37, pp. 13–15. This argument cites solely to caselaw that predates the Eighth Circuit's opinion in *Chambers v. Pennycock*, where the court clarified that "there is no uniform requirement that a plaintiff show more than *de minimis* injury to establish an application of excessive force." 641 F.3d 898, 907 (8th Cir. 2011). In any event, Mr. Watkins testified to receiving more than *de minimis* injuries from his tasing, including two scars from the taser barbs and chronic numbness in his face, left hand, and left leg.

(8th Cir. 2021). Mr. Watkins has not presented any evidence that Corporal Smith's actions resulted from the Washington County Sheriff's Department's policies, customs, or failure to train. Assuming Mr. Watkins is correct that Corporal Smith's taser use violated the Sheriff's Department's policies, that fact suggests that it was Corporal Smith's *deviation* from policy, rather than the policy itself, that caused Mr. Watkin's injuries.

Accordingly, the third objection is **OVERRULED**.

## V.  OBJECTION FOUR

The fourth and final objection concerns Mr. Watkins's claim that Corporal Smith lacked probable cause to arrest him. The R&R recommends staying this claim under *Younger v. Harris*, 401 U.S. 37 (1971), pending resolution of Mr. Watkins's criminal case for possession of drug paraphernalia in the Circuit Court of Washington County, Arkansas, case number 72CR-21-2512. However, since the filing of the R&R, that case has now concluded. On April 18, 2023, Mr. Watkins pleaded guilty to failure to appear for a court date and was sentenced to 36 months in the Arkansas Department of Corrections. His original charge for possession of drug paraphernalia on October 12, 2021, was dismissed *nolle prosequi*. Mr. Watkins's objection to the Court staying his probable-cause claim is therefore **MOOT,** and the Court will address the merits of the claim in the first instance.

"An officer may carry out a warrantless arrest" of an individual who is outside their home "if he has probable cause to believe that a person is committing or has committed 'even a very minor criminal offense.'" *Gerling v. City of Hermann*, 2 F.4th 737, 742 (8th Cir. 2021) (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). Officers are

entitled to qualified immunity if they have arguable probable cause to carry out an arrest, and "[a]rguable probable cause exists where an officer arrests a suspect on the mistaken belief that the arrest is supported by probable cause if the officer's mistake is objectively reasonable." *Id.* (citing *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011)).

Corporal Smith argues that he had probable cause to believe that Mr. Watkins had committed the following crimes: criminal mischief in damaging the property owner's fence; obstructing governmental operations by refusing to give his name to Corporal Smith; driving with a suspended license; possession of drug paraphernalia; and refusal to submit to arrest.

It is a Class D felony in Arkansas to possess drug paraphernalia with the purpose to inhale methamphetamine. Ark. Code Ann. § 5-64-443(a)(2). Although the charge was later dismissed, Mr. Watkins admitted during his deposition that on October 12, 2021, he possessed illegal drug paraphernalia—a pipe used to smoke methamphetamine and scales used to weigh drugs. *See* Doc. 38-8, pp. 43–44, 52 ("The paraphernalia in my car was breaking the law, but [Corporal Smith] didn't know that I had that on me."). It is therefore undisputed that Corporal Smith had at least arguable probable cause to believe Mr. Watkins had committed a crime, and Corporal Smith could carry out a warrantless arrest of Mr. Watkins. Corporal Smith is entitled to summary judgment on this claim.

## II.    CONCLUSION

Having resolved all pending objections, **IT IS ORDERED** that the Report and Recommendation (Doc. 52) is **ADOPTED IN PART AND NOT ADOPTED IN PART**.

Corporal Smith's Motion for Summary Judgment (Doc. 36) and Supplemental Motion (Doc. 46) are **GRANTED IN PART AND DENIED IN PART** as follows:

> (1) Mr. Watkins's Fourth Amendment claim based on Corporal Smith's entry onto the driveway of a third party is **DISMISSED WITH PREJUDICE**;
>
> (2) Mr. Watkin's excessive-force claim against Corporal Smith in his individual capacity is preserved for trial;
>
> (3) Mr. Watkins's official-capacity claims are **DISMISSED WITH PREJUDICE**; and
>
> (4) Mr. Watkins's claim that Corporal Smith lacked probable cause to arrest him is **DISMISSED WITH PREJUDICE**.

The Court will separately issue a scheduling order setting Mr. Watkins's excessive-force claim for trial.

**IT IS SO ORDERED** on this 9th day of June, 2023.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

16